**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO**

JOSE LUIS RIVERA-CARTAGENA, *et al.*,

> **Plaintiffs,**

> **v.**

WAL-MART PUERTO RICO, INC., *et al.*,

> **Defendants.**

CIVIL NO. 09-1787 (FAB)

**OPINION & ORDER**[1]

BESOSA, District Judge

Wal-Mart Puerto Rico, Inc. ("Wal-Mart") has filed a motion to dismiss. (Docket No. 40.) Plaintiffs have filed an opposition. (Docket No. 47.) Eriee Gibson ("Gibson) has also filed a motion to dismiss. (Docket No. 51.) Plaintiffs have filed an opposition (Docket No. 54) and Gibson a reply. (Docket No. 61.)

Having considered the arguments contained in those motions, plaintiffs' oppositions and Gibson's reply, the Court **GRANTS IN PART AND DENIES IN PART** Wal-Mart's motion to dismiss (Docket No. 40), and **GRANTS** Gibson's motion to dismiss (Docket No. 51.)

---

[1] Myrgia Palacios, a fourth-year student at Interamerican University Law School, assisted in the preparation of this Opinion and Order.

**I.    BACKGROUND**

**A.    Procedural Background**

On February 8, 2010, plaintiffs Jose Luis Rivera-Cartagena ("Rivera"), his wife Ivanesa Velez ("Velez") and their conjugal partnership, filed a second amended complaint ("complaint") against Wal-Mart and Gibson.  (Docket No. 30.)  The complaint alleges claims pursuant to:  (1) the Uniformed Services Employment and Reemployment Act ("USERRA"), 38 U.S.C. §§ 4301-4335; (2) Law 62 of the Commonwealth of Puerto Rico ("Law 62"), P.R. Laws Ann. tit. 25, §§ 2001-2813; (3) Law 80 of the Commonwealth of Puerto Rico ("Law 80"), P.R. Laws Ann. tit. 29, §§ 185a-185m; (4) articles 1802 and 1803 of the Puerto Rico Civil Code ("Articles 1802 and 1803"), P.R. Laws Ann. tit. 31, §§ 5141-5142; and (5) Article II of the Puerto Rico Constitution ("P.R. Constitution").

On April 19, 2010, Wal-Mart filed a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) ("Rule 12(b)(6)"), (Docket No. 40), arguing:  (1) that Rivera's claims under articles 1802 and 1803 should be dismissed because they hinge upon the same facts as his Law 62 claim; (2) that Velez and the conjugal partnership's claims under articles 1802 and 1803 should be dismissed because it is not entitled to bring a separate cause of action arising from the same set of facts; (3) that plaintiffs' claims under the P.R. Constitution should be dismissed because the

complaint is insufficient to state a claim upon which relief may be granted; and (4) that some of Rivera's claims under Law 62 are time-barred.[2]

Plaintiffs filed their opposition on May 25, 2010, (Docket No. 47), arguing:  (1) that Velez's and the conjugal partnership's claims under articles 1802 and 1803 should not be dismissed because, as relatives of Rivera, they are entitled to an independent claim; and (2) that plaintiffs' claims under the P.R. Constitution are sufficient to state a claim.  Nevertheless, plaintiffs conceded:  (1) that Rivera's claims under articles 1802 and 1803 hinged upon the same facts; and (2) that the causes of action under Law 62, which are based on events occurring prior to February 10, 2009, are time-barred.  Id.  Plaintiffs moved for voluntary dismissal on these causes of action and the Court dismissed them with prejudice on May 25, 2010.  (Docket No. 48.)

On June 15, 2010, Gibson also filed a motion to dismiss pursuant to Rule 12(b)(6) (Docket No. 51.)  He argued:  (1) that Rivera lacks a cause of action against him under Law 80, Law 62 and USERRA because he is not an "employer"; (2) that Velez and the conjugal partnership are not entitled to bring separate causes of action, arising from the same set of facts, under articles 1802

---

[2] As noted above, the complaint alleges a claim against Wal-Mart pursuant to USERRA.  (See Docket No. 30 at ¶¶ 66-74.)  Wal-Mart does not address that claim in its motion, nor request its dismissal.  (See Docket No. 40.)  Accordingly, the Court does not address the merits of that claim here, and it remains pending.

and 1803; and (3) that plaintiffs fail to state a claim under the P.R. Constitution.

Plaintiffs filed their opposition to Gibson's motion on July 22, 2010 (Docket No. 54), and argued:  (1) that USERRA claims against Gibson should not be dismissed because allegations in the complaint are sufficient to state a claim; (2) that Velez's and the conjugal partnership's claims under articles 1802 and 1803 should not be dismissed because, as relatives of Rivera, they are entitled to independent claims; and (3) that plaintiffs' claims under the P.R. Constitution are sufficient to state a claim.  Gibson filed a reply, sustaining the same arguments as to:  (1) Rivera's claims under USERRA; (2) Velez's and the conjugal partnership's claims under articles 1802 and 1803; and (3) plaintiffs' claims under the P.R. Constitution.  (Docket No. 61.)

In their opposition to Gibson's motion to dismiss, plaintiffs conceded that Gibson does not fit the definition of "employer" under Law 80 or Law 62.  (Docket No. 54.)  They moved for voluntary dismissal on these causes of action and the Court dismissed them with prejudice on July 22, 2010.  (Docket No. 55.)

After plaintiffs' motions for voluntary dismissal were granted, only some of the arguments advanced by defendants remain pending.  As to Wal-Mart, those arguments relate to:  (1) Velez's and the conjugal partnership's claims for damages under

Civil No. 09-1787 (FAB)                                              5

articles 1802 and 1803; and (2) plaintiffs' claim under the P.R.
Constitution.  (Docket No. 40.)[3]

Regarding Gibson, the remaining arguments concern:
(1) Rivera's claim under USERRA; (2) Velez's and the conjugal
partnership's claims for damages under articles 1802 and 1803; and
(3) plaintiffs' claim under the P.R. Constitution.  (Docket
No. 51.)

B.   **Factual Background**

The Court draws the following facts from plaintiffs'
complaint, (Docket No. 30), and takes them as true for the purpose
of resolving the defendants' motions.  See <u>Correa-Martinez v.
Arrillaga-Belendez</u>, 903 F.2d 49, 51 (1st Cir. 1990).

Plaintiffs allege that Rivera started working for
Supermercados Amigo[4] in March 28, 1988, and that after twenty one
years of promoting him to positions with higher pay and
responsibilities within the organization,[5] he was unjustly

_____

[3] Plaintiffs' claims against Wal-Mart under USERRA, Law 80 and
Law 62, are not mentioned in Wal-Mart's motion to dismiss.

[4] In 2003, Wal-Mart bought Supermercados Amigo.  Rivera kept
the benefits he had acquired while he was an employee of
Supermercados Amigo and obtained additional benefits at the time of
the purchase.  (Docket No. 30 at ¶ 2g.)

[5] Rivera started working as a bagger in March 28, 1998.  He
worked his way up through different positions:  Cashier, Head
Cashier, Front End Manager, Assistant Manager and Manager.  (Docket
No. 30 at ¶ 2.)

terminated for an alleged violation of Wal-Mart's policy prohibiting alcohol consumption. Id. at ¶¶ 1-2, 49.

Plaintiffs aver that Rivera's termination was willful and with the clear motive of discriminating against him because of his military service, notwithstanding his good performance, and even though his participation in the training related to his membership in the Puerto Rico National Guard did not by any means affect his performance as an employee. Id. at ¶¶ 6-7, 51. Rivera also claims that he was denied promotions and was transferred repeatedly because of the same discriminatory reasons, and that his employer reduced his "Profit Bonus" by an amount equivalent to the two months he was on military leave. Id. at ¶¶ 9, 11, 15.

Rivera has been a member of the Puerto Rico National Guard for sixteen years, and must attend periodical training for which he had to take military leaves of absences from his employment with Wal-Mart. Id. at ¶¶ 4-5. Nevertheless, Rivera obtained high scores and "Above Target" and "On Target" ratings in his performance evaluations for the last years, and the store he managed obtained the highest score in the Associates Opinion Survey in Puerto Rico. Id. at ¶¶ 7-8.

Rivera alleges that he complained to a Wal-Mart Human Resources Specialist about discriminatory comments made to him by Wal-Mart's Operations Director because of his military training and about the pressures the Operations Director put on him dissuading

him from attending that training.  <u>Id</u>. at ¶¶ 20-21.  Rivera further alleges that he also complained to Human Resources regarding discriminatory remarks made to him by Wal-Mart's District Manager, and that for the same discriminatory reasons, he was ignored and not invited to meetings or seminars for managers.  <u>Id</u>. at ¶¶ 28-29.

        According to plaintiffs, the event that culminated in the termination of Rivera's employment arose when District Director Eriee Gibson required him to attend a meeting, with other store managers of his district, that was going to be held in the Wal-Mart Supercenter in Ponce on July 8, 2009.  <u>Id</u>. at ¶ 30.  Rivera participated in the meeting even though it was held on his day off. After the meeting was over, Gibson invited all participants to have lunch in the "Deli" area of the Wal-Mart Supercenter.  <u>Id</u>. at ¶¶ 30-31.  The group ended up having lunch, however, at "El Cuñao" Restaurant in the mountain area of Cayey.  <u>Id</u>. at ¶¶ 31-32, 34. Gibson drove the van in which the participants were transported to Ponce and Cayey, and drove on a road known for being steep and with many curves.  <u>Id</u>. at ¶¶ 33-34.

        Upon Rivera's arrival at "El Cuñao", he was suffering from dizziness, and after having lunch, he still felt discomfort. In order to try to settle his stomach, Rivera ordered a "digestive liquor," Cointreau.  <u>Id</u>. at ¶¶ 35-37.  Gibson was at the same table as Rivera when he ordered the Cointreau, did not dissuade Rivera from drinking the Cointreau he had just ordered and at no time

warned Rivera that if he drank the Cointreau, he would be in violation of any company rule.  Id. at ¶ 38.

When the time came to pay the bill, Gibson volunteered to pay the lunch for the whole group but told Rivera that he had to pay for the Cointreau he had ordered.  Gibson did not mention to Rivera that a disciplinary action would be taken against him for drinking the Cointreau during his lunch break, or that he had breached any company policy.  Rivera paid for the Cointreau as instructed.  Id. at ¶¶ 39-40.

The next day, July 9, 2009, while Rivera was working, he received a call from Gibson, who instructed him to go a meeting "to discuss a case".  When Rivera arrived, however, Wal-Mart's Human Resources Specialist for the Northeast District was also there. Id. at ¶¶ 43-44.  Rivera alleges that he was questioned as to why he drank the Cointreau during the lunch break the day before, that he explained the physical discomfort he had when he arrived to "El Cuñao" and that he drank the Cointreau in order to try to settle his stomach.  Despite his explanations, "Defendants" informed him that he was suspended from his employment until an investigation was carried out.  Id. at ¶¶ 43-47.

On July 10, 2009, Rivera was again required to attend a meeting with Gibson and the Human Resources Specialist for the Northeast District.  In that meeting, "Defendants" terminated

Rivera for allegedly violating Wal-Mart's policy which prohibits alcohol consumption.  Id. at ¶¶ 48-49.

        This suit is based on plaintiffs' claim that Rivera's termination was not because of a violation to Wal-Mart's alcohol consumption prohibition policy, but instead, one with a clear motive of discrimination because of his military service, because the termination took place a little over a month after he informed Wal-Mart that he would have to attend another military training and precisely less than a month before the training would begin.  Id. at ¶¶ 50-51.

## II.  MOTION TO DISMISS STANDARD

        To survive a motion to dismiss, a complaint must allege "a plausible entitlement to relief." Rodriguez-Ortiz v. Margo Caribe, Inc., 490 F.3d 92, 95 (1st Cir. 2007) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 559 (2007)).  To avoid dismissal, the complaint must contain factual allegations that "raise a right to relief above the speculative level", Twombly, 550 U.S. at 555, or in other words, plaintiffs must "nudge[] their claims across the line from conceivable to plausible." Twombly, 550 U.S. at 570.

        The Court accepts all well-pleaded factual allegations as true, and draws all reasonable inferences in plaintiffs' favor. See Correa, 903 F.2d at 49, 51.  The Court need not credit, however, "bald assertions, unsupportable conclusions, periphrastic

circumlocutions, and the like" when evaluating the complaint's allegations.  Aulson v. Blanchard, 83 F.3d 1, 3 (1st Cir. 1996).

Plaintiffs are responsible for putting their best foot forward in an effort to present a legal theory that will support their claim.  Santana Castro v. Toledo Davila, 579 F.3d 109, 117 n.9, (citing McCoy v. Mass., 950 F.2d 13, 23 (1st Cir. 1991)). Plaintiffs must set forth "factual allegations, either direct or inferential, regarding each material element necessary to sustain recovery under some actionable theory."  Gooley v. Mobil Oil Corp., 851 F.2d 513, 515 (1st Cir. 1988).

## III. RIVERA'S CLAIM UNDER USERRA AGAINST GIBSON

USERRA prohibits employment discrimination against individuals based upon their service in the uniformed services.  38 U.S.C. §§ 4301-4335.  It provides that a member of the Armed Services "shall not be denied initial employment, reemployment, retention in employment, promotion, or any benefit of employment by an employer on the basis of that membership."  38 U.S.C. § 4331(a).  The purpose of USERRA is not to protect employees from tortious acts of employers, but to prevent and to compensate service members for employment discrimination based on military status.  Gordon v. Wawa Inc., 388 F.3d 78, 84-85 (3rd Cir. 2004).

For a plaintiff to establish a claim under USERRA, he or she must show that his or her military status was the "motivating factor" in his or her employer's discriminatory action, Baerga

Castro v. Wyeth Pharm., Inc., No. 08-1014, 2009 WL 2871148, at *10 (D.P.R. Sept. 3, 2009), even if the employee's military status was not the sole factor in the employer's decision. O'Neil v. Putnam Retail Mgmt., LLP, 407 F.Supp.2d 310, 316 (D.Mass. 2005) (citing Hills v. Michelin N. Am., Inc., 252 F.3d 307, 312 (4th Cir. 2001)). If the plaintiff establishes that his or her military status was a motivating factor in the employer's decision, the burden of proof then shifts to the employer, which will avoid liability only if the employer can prove that the action would have been taken in the absence of the employee's military status. Velazquez Garcia v. Horizon Lines of P.R., Inc., 473 F.3d 11, 16 (1st Cir. 2007).

Direct evidence, however, is not required to demonstrate discrimination; circumstantial evidence may be used. Desert Palace, Inc. v. Costa, 539 U.S. 90, 91 (2003). The First Circuit Court of Appeals has held that "[a]n employee can establish pretext by showing weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons such that a fact finder could infer that the employer did not act for the asserted non-discriminatory reasons. "Carreras v. Sajo, 596 F.3d 25, 37 (1st Cir. 2010) (Citing Santiago Ramos v. Centennial P.R. Wireless Corp., 217 F.3d 46, 56 (1st Cir. 2000)). Plaintiff may also show pretext by demonstrating that "discriminatory comments were made by the key decision maker or those in a position to influence the decision maker". Id. at 55.

Discriminatory motivation because of military status may be inferred from a variety of factors, including "proximity in time between the employer's military activity and the adverse employment action, inconsistencies between the proffered reason and other actions of the employer, an employer's expressed hostility towards members protected by the statute together with knowledge of the employee's military activity, and disparate treatment of certain employees compared to other employees with similar work records or offenses." Conners v. Billerica Police Dept., 679 F. Supp. 2d 218, 226 (D.Mass. 2010), citing Sheehan v. Dept. of the Navy, 240 F.3d 1009, 1014 (Fed. Cir. 2001). Proximity in time is not an exclusive test, and there is no reason for a Court to limit itself to looking only at the proximity of the adverse employment action to military activity. See Velazquez, 473 F.3d at 11, 19.

USERRA defines "employer" as "any person, institution, organization, or other entity that pays salary or wages for work performed or that has control over employment opportunities, including a person, institution, organization, or other entity to whom the employer has delegated the performance of employment-related responsibilities. 38 U.S.C. § 4303 (4)(A)(I). Furthermore, courts have interpreted that under USERRA, the term "employer" applies to those individuals who have the power and authority to hire and fire personnel. See Empresas Casino Joliet Corp. v. NLRB, 204 F.3d 719, 721 (7th Cir. 2000) (citing NLRB v.

<u>Attleboro Assocs., Ltd.</u>, 176 F.3d 154, 164 (3rd Cir. 1999);
<u>Caremore, Inc. v. NLRB</u>, 129 F.3d 365, 369-70 (6th Cir. 1997)).

Gibson contends that he is not an "employer" within the
meaning of USERRA, and even if he were, plaintiffs have not
presented sufficient facts in their complaint to sustain a
plausible claim.  Plaintiffs, on the other hand, argue that Gibson
is an "employer" because he was the person with authority and
control over his termination.  The Court agrees with Gibson.

There is no inference or allegation in plaintiff's complaint
regarding Gibson's control over the adverse employment action
suggesting that Gibson is an "employer" within the meaning of
USERRA.  <u>See</u> <u>Correa</u>, 903 F.2d at 51.  The complaint merely states
that "[d]efendants informed him that he was suspended from his
employment until an investigation was carried out", (Docket No. 30
at ¶ 47), and that "[d]efendants terminated Plaintiff [sic]
employment".  <u>Id</u>. at ¶ 49.  Plaintiffs fail to identify Gibson as
the individual who initiated the investigation, or that he was the
person who suspended or terminated Rivera.  Plaintiffs fail to
proffer any allegation from which this Court could conclude that

Gibson had any control or decision in any of those processes.[6]  On the contrary, according to plaintiffs' complaint, it was not until Human Resources was involved that the investigation started, and was not until the second meeting with Human Resources that Rivera was informed of his termination.  It seems, therefore, that Gibson had no decision or control on those processes.

Furthermore, even though plaintiffs allege that Rivera was denied promotions, that he was transferred repeatedly because of the same discriminatory reasons, and that his employer reduced his "Profit Bonus" in an amount equivalent to the two months he was on military leave, id. ¶¶ 9, 11, 15, nowhere in the complaint can the Court find a single allegation implicating Gibson's involvement in those discriminatory actions.  Even though plaintiffs have alleged the "proximity" of the termination in regards to Rivera's military training, plaintiffs fail to allege who denied the promotions, who transferred him repeatedly or who reduced his "Profit Bonus" or for what reasons.

---

[6]  Plaintiffs' opposition to Gibson's motion to dismiss, (Docket No. 54 at ¶ 5), states, erroneously, that they alleged in their "averment 44-45" of the second amended complaint that Gibson interrogated plaintiff.  They also state that they alleged in their "Averment 47" of the second amended complaint that Gibson suspended plaintiff from employment, and that in their "averment 29(d)" of their second amended complaint they alleged that Gibson informed Rivera he was terminated.  Because the Court is ruling a Motion to Dismiss under Rule 12(b)(6), the Court will only take as true the facts presented in the second amended complaint ("complaint"), where only the term "Defendants", and not "Gibson", is used in reference to the investigation, suspension and termination. (Docket No. 30, at ¶¶ 44-49.)

Even assuming, *arguendo*, that Gibson is an "employer" because he had control over Rivera's suspension, termination, promotions denial, transfers or bonus reduction, there is no allegation regarding Gibson's knowledge of Rivera's military status or training leaves that can lead the Court to conclude that Gibson used Rivera's military status as a "motivating factor" in his decisions. In fact, even if this Court were to make all inferences in plaintiff's favor, see Correa, 903 F.2d at 51, the only specific acts that are alleged in the complaint which tend to infer that some individuals knew of his military status and acted upon that fact refer to individuals not included as defendants in the complaint.  Mere conclusions asserting Gibson's liability are just not enough.  See Aulson, 83 F.3d at 3.

For the forgoing reasons, Rivera's USERRA claim against Gibson is therefore **DISMISSED**.

## IV.  VELEZ'S AND RIVERA-VELEZ CONJUGAL PARTNERSHIP'S ARTICLE 1802 AND 1803 CLAIMS AGAINST WAL-MART AND GIBSON

In order to establish a cause of action under article 1802 of the Puerto Rico Civil Code, P.R. Laws Ann. tit. 31, § 5141, a plaintiff has to satisfy the following three elements: "(1) an act or omission constituting fault or negligence; (2) a clear and palpable damage; and (3) a legally sufficient causal relationship between defendant's tortuous conduct and the injuries sustained by plaintiff." Muñoz Rivera v. Walgreens Co., 428 F. Supp. 2d 11, 33 (D.P.R. 2006).  In addition, under article 1803, P.R. Laws Ann.

tit. 31, § 5142, vicarious liability is apportionable to directors of an establishment or enterprise for damages caused by their employees in the course of their employment or on account of their duties.  Burgos Oquendo v. Caribbean Gulf Refining Corp., 741 F.Supp. 330, 333 (D.P.R. 1990).

It is well-settled, however, that "the provisions of the Civil Code are supplementary to special legislation." See Barreto v. ITT World Directories, Inc., 62 F.Supp.2d 387, 393 (D.P.R. 1999). Consequently, even though plaintiffs related to a victim of discrimination are allowed to assert a claim under articles 1802 and 1803 to redress the damages they purportedly suffered as a result of the alleged victim's discriminatory discharge, Pagan Colon v. Walgreens de San Patricio, Inc., No. 08-2398, 2010 WL 2267377, at *1 (D.P.R. June 3, 2010) (citing Maldonado Rodriguez v. Banco Central Corp., 138 D.P.R. 268 (P.R. 1995) and Santini Rivera v. Serv. Air, Inc., 137 D.P.R. 1 (P.R. 1994)), those claims are only permitted when such claims are based on "tortious or negligent conduct distinct from that covered by the specific law(s) invoked", or which have an independent basis to support them.  Rivera Melendez v. Pfizer Pharm., Inc., No. 10-1012, 2010 WL 4117043, at *2 (D.P.R. Oct. 19, 2010) (citing Rosario v. Valdes, No. 07-1508, 2008 WL 509204, at *2 (D.P.R. Feb. 21, 2008)).  If the victim's employment discrimination claims are brought under a statute that does not provide for a general damages award, "it would be

ludicrous [that the victim's relatives were] entitled to greater benefits than [the victim] himself [or herself] would be entitled to." <u>Barreto</u>, 62 F.Supp.2d at 394.

Moreover, a person's cause of action in tort is contingent upon his relative's cause of action under the employment discrimination statute. <u>Ocasio Berrios v. Bristol Myers Squibb, Inc.</u>, 51 F.Supp.2d 61, 65 (D.P.R. 1999). Hence, in order for the Court to be able to evaluate Velez's and the conjugal partnership's claims, Rivera's claims have to be considered first.

Velez's and the conjugal partnership's claims are not independent of Rivera's claims because they are based on the same alleged discriminatory acts. <u>See</u> <u>Rivera Melendez</u>, No. 10-1012, 2010 WL 4117043, at *2. In their complaint, they "reallege and incorporate . . . by reference the allegations contained in Section IV of this complaint", (Docket No. 30 at ¶¶ 20, 22), to support their article 1802 and 1803 causes of action. They do not allege any distinct tortious conduct, inflicted by Gibson or Wal-Mart, in support of their article 1802 or 1803 claims. <u>See</u> <u>Rivera Melendez</u>, No. 10-1012, 2010 WL 4117043, at *2.

On the other hand, Rivera's remaining causes of action against Wal-Mart, not in dispute here, are based on Law 80, Law 62 and USERRA. Because Law 80, Law 62 and USERRA do not allow Rivera to recover damages for mental anguish, pain or suffering, Velez and the conjugal partnership cannot either. <u>See</u> <u>Soto Lebron v. Federal</u>

Express Corp., 538 F.3d 45, 55 (1st Cir. 2008) ("a wrongfully terminated employee cannot recover emotional distress damages for the termination itself."); Barreto, 62 F.Supp.2d at 394 (noting that neither Law 62 nor USERRA provide for "damages award").

Rivera's Law 80 and Law 62 claims against Gibson have already been dismissed, (Docket No. 55), and the remaining USERRA claim was dismissed above. Consequently, because Rivera has no claim against Gibson because of the alleged discriminatory actions, neither do Velez or the conjugal partnership. See Ocasio Berrios, 51 F.Supp.2d at 65. Moreover, neither Velez nor the conjugal partnership have alleged a distinct tortious conduct for which Gibson or Wal-Mart could be held liable.

Therefore, Velez's and the conjugal partnership's claims against Gibson and Wal-Mart, under articles 1802 and 1803 of the Puerto Rico Civil Code, are **DISMISSED**.

**V.   PLAINTIFFS' CLAIMS UNDER THE CONSTITUTION OF THE COMMONWEALTH OF PUERTO RICO AGAINST WAL-MART AND GIBSON**

   **A.   Velez's and the conjugal partnership's claims**

As a preliminary matter, the Court notes that Velez and the conjugal partnership are listed as plaintiffs, and that under the "Violation of the Dignity and Intimacy Clauses of the Constitution of the Commonwealth of Puerto Rico" cause of action, (Docket No. 30 at 23), they refer to "Plaintiffs' damages", and indicate that "Defendants have violated Plaintiffs' rights", id. at ¶ 91.

The Puerto Rico Supreme Court has ruled that "a plaintiff has standing to sue if he meets the following requirements:  the party has suffered a clear and palpable injury, not abstract or hypothetical; there is a causal nexus between the cause of action filed and the alleged harm; and finally, the cause of action arises from the [P.R.] Constitution or some statute."  Asociacion de Maestros de P.R. v. Torres, ___ P.R. Offic. Trans. ___, 1994 WL 16035185 at *3 (P.R. 1994).

"The standing probe is both plaintiff-specific and claim-specific.  Thus, a reviewing court must determine whether each particular plaintiff is entitled to have a federal court adjudicate each particular claim that he asserts."  Pagan v. Calderon, 448 F.3d 16, 26 (1st Cir. 2006) (citing Allen v. Wright, 468 U.S. 737, 752 (1984)).  The principal role of the defense of lack of standing is to assure the court that the party who brought the action is one whose interest is of such nature that he would probably pursue his cause of action vigorously and bring the question in controversy before the attention of the court.  Hernandez Agosto v. Romero Barcelo, 12 P.R. Offic. Trans. 508 (P.R. 1982) (citing Flast v. Cohen, 392 U.S. 83, 99-100 (1968)).

"The standing to sue depends, perforce, on the justiciable nature of the claim brought against the defendant.  Even in those cases stemming from a constitutional provision or statute, "the plaintiff still must allege a distinct and palpable

injury to himself, even if it is an injury shared by a large class
of other possible litigants." Fundacion Arqueologica v.
Departamento de la Vivienda, 9 P.R. Offic. Trans 509 (P.R. 1980)
(citing Warth v. Seldin, 422 U.S. 490, 498, and 501 (1975)).  Only
when there is "no other effective manner . . . to preserve said
rights", would a party be considered to have standing to "assert
the rights of third parties".  Pueblo v. Hernandez Colon, 18 P.R.
Offic. Trans. 1022, 1030 (P.R. 1987).

        Plaintiffs have stated that they "reallege and
incorporate herein by reference the allegations contained in
Section IV of this complaint", (Docket No. 30 at ¶ 89).  A review
of the allegations in Section IV demonstrates that the allegations
contained refer only to Rivera's termination.   There are no
allegations regarding any distinct act or conduct that could have
resulted in deprivation of Velez's or the conjugal partnership's
rights.

        The only plaintiff with standing to protect his own
rights is Rivera, who is the person who was allegedly unjustly
terminated and was allegedly deprived of his constitutional rights
as a result of such termination.  See Fundacion Arqueologica v.
Departamento de la Vivienda, 9 P.R. Offic. Trans. 509 (P.R. 1980).
Because it is clear that neither Velez nor the conjugal partnership
have standing to pursue any claim because of the alleged violation

of Rivera's constitutional rights, their claims pursuant to the

P.R. Constitution against Wal-Mart and Gibson are **DISMISSED**.

> **B.   Rivera's claims.**

It is well settled that the rights afforded by the P.R.

Constitution protect individual citizens from state actions, not

against private actors.  Rolon v. Rafael Rosario & Assocs., Inc.,

450 F.Supp.2d 153, 162 (D.P.R. 2006).  "Under our legal system, the

right to privacy and the protection granted to the dignity of the

human being (personhood) are not wandering entities in search of an

author or a juridical pigeonhole.  They are consecrated in the

clear text of our Constitution." Figueroa Ferrer v. E.L.A., 7 P.R.

Offic. Trans. 278 (P.R. 1978).  The right to privacy in Puerto Rico

exists *ex proprio vigore*, however, and is enforceable between

private individuals.  Pacheco Pietri v. E.L.A., 1993 P.R.-Eng 839,

817 (P.R. 1994).  (Citing E.L.A. v. Hermandad de Empleados, 4 P.R.

Offic. Trans. 605 (P.R. 1975); Colon v. Romero Barcelo, 12 P.R.

Offic. Trans. 718 (P.R. 1982)); Arroyo v. Rattan Specialties, 17

P.R. Offic. Trans. 43 (P.R. 1986).

In an employment scenario, "the validity of intrusion

into an employee's privacy rights will be examined by reference to

the employer's particular business interests" it is trying to

protect.  Congreso de Uniones Industriales de P. R. v. Bacardi

Corp., 961 F.Supp. 338, 342 (D.P.R. 1997) (citing Arroyo v. Rattan

Specialties, 17 P.R. Offic. Trans. 43 (P.R. 1986)).  To prevail in

a cause of action in this context, "the plaintiff must present evidence of the employer's concrete actions that impinge upon the plaintiff's private or family life". Rivera Rosa v. Citibank, 567 F.Supp.2d 289 (D.P.R. 2008).

The Court finds no allegation in Rivera's complaint regarding a violation of his intimacy or privacy rights. The only instance where an "intimacy" claim is mentioned is in the fifth cause of action's title. (Docket No. 30 at 23.) Bald assertions or unsupportable conclusions are not enough to survive a motion to dismiss. See Aulson, 83 F.3d at 3. Thus, Rivera's claim as to the alleged violation of his intimacy right under the P.R. Constitution is **DISMISSED**.

As to Rivera's dignity violation claim, Article II Section 1 of the Bill of Rights of the P.R. Constitution states: "The dignity of the human being is inviolable. All men are equal before the law. No discrimination shall be made on account of race, color, sex, birth, social origin or condition, or political or religious ideas." "Sec. 1 . . . of Art. II of the Constitution of the Commonwealth of Puerto Rico [is] self executing." Figueroa Ferrer v. E.L.A., 7 P.R. Offic. Trans. 278 (P.R. 1978).

The right to employment has been repeatedly recognized by the Puerto Rico Supreme Court as a fundamental right and part of the right to dignity protected under the P.R. Constitution. Arroyo v. Rattan Specialties, 17 P.R. Offic. Trans. 43 (P.R. 1986). But,

as other fundamental rights, this right is not an absolute one, Perez v. Junta Dental, 16 P.R. Offic. Trans. 269 (P.R. 1985), and in the case of a private employer, Law 80 provides for justified employment termination when "the worker indulges in a pattern of improper or disorderly conduct". P.R. Laws Ann. tit. 29, § 185b(a).

As stated before, plaintiff's complaint suffers from lack of specificity, and again, the Court cannot find in the complaint any allegation regarding Gibson's plausible acts upon which he could have violated Rivera's dignity. Even if this Court makes all inferences in favor of plaintiff, see Correa, 903 F.2d at 51, there is not a single allegation from which the Court can infer that Gibson investigated, suspended, or terminated Rivera, that he was the individual responsible for the promotions that were denied him, or for the repeated transfers Rivera suffered. Neither can this Court conclude that Gibson discriminated against Rivera, because Gibson's knowledge of Rivera's military status is not even alleged. There are just no facts on which the Court can conclude that plaintiff has adequately alleged any constitutional violation against Gibson. Rivera's constitutional claim against Gibson is **DISMISSED.**

The only specific acts alleged in the complaint which tend to infer that someone might have acted in violation of Rivera's rights refer to individuals employed by Wal-Mart. It is

alleged that Wal-Mart's Operation Director, District Manager and Human Resources Specialists had knowledge of Rivera's military status and training.  Rivera also alleges that Wal-Mart's Operations Director put pressure on him to dissuade him from attending military training.  (Docket No. 30 at ¶¶ 17-18, 20, 28-29.)  Rivera also claims that he was denied promotions and was transferred repeatedly because of the same discriminatory reasons, and that his employer reduced his "Profit Bonus" in an amount equivalent to the two months he was on military leave.  Id. at ¶¶ 9, 11, 15.

Applying these allegations to the relevant legal background, it appears that Rivera has alleged sufficient facts that could plausibly satisfy his constitutional claims against Wal-Mart.  Twombly, 550 U.S. at 570.  Accordingly, dismissal of this claim against Wal-Mart is unwarranted at this stage of the proceedings.

## VI.  CONCLUSION

For the foregoing reasons, the **Court GRANTS IN PART AND DENIES IN PART** Wal-Mart's motion to dismiss (Docket No. 40.)  The motion to dismiss is **GRANTED** as to Velez's and the conjugal partnership's claims for damages under articles 1802 and 1803 of the Puerto Rico Civil Code, as well as their claims under the P.R. Constitution. Those claims are hereby **DISMISSED WITH PREJUDICE**.  The Court **DENIES**

Wal-Mart's motion to dismiss as to Rivera's claim against it under the P.R. Constitution.

The Court also **GRANTS** Gibson's motion to dismiss (Docket No. 51.)  All plaintiffs' claims against Gibson under USERRA, articles 1802 and 1803 of the Puerto Rico Civil Code and under the P.R. Constitution are hereby **DISMISSED WITH PREJUDICE.**

Additionally, the claims against unnamed defendants ABC Insurance Company, John Doe and Jane Doe are **DISMISSED WITH PREJUDICE.**

**IT IS SO ORDERED.**

San Juan, Puerto Rico, March 4, 2011.

<u>s/ Francisco A. Besosa</u>
FRANCISCO A. BESOSA
UNITED STATES DISTRICT JUDGE